# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 3, 2005

## STATE OF TENNESSEE v. MANDELL BENTON

**Appeal from the Criminal Court for Shelby County**
**No. 02-01153     Bernie Weinman, Judge**

---

**No. W2002-02257-CCA-R3-CD  - Filed August 29, 2005**

---

The defendant, Mandel Benton, who was originally charged with statutory rape, was convicted of attempted statutory rape.  The trial court imposed a sentence of one hundred and eighty days to be served in the county jail.  In this appeal, the defendant asserts that the evidence is insufficient to support the conviction.  The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

James F. Schaeffer, Jr., Memphis, Tennessee, for the appellant, Mandell Benton.

Paul G. Summers, Attorney General & Reporter, Renee W. Turner, Assistant Attorney General; and Michael Leavitt, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On June 29, 2001, the fourteen-year-old victim, A.F.,[1] was living with her mother, Helen Ford, in Memphis.  Shortly after her mother left for work in the early morning hours, the victim telephoned a "chat line" and spoke with the defendant, who identified himself as "Mario."  The victim invited Mario to her residence and he arrived approximately fifteen minutes later.  While the two were sexually engaged, a neighbor, Shermida Fields, interrupted them and ordered the defendant to leave.  When Ms. Fields informed the victim's mother, Helen Ford, of the incident, the mother called police, and the defendant was later charged with statutory rape.

At trial, the victim testified that after her mother, who was working the 3:00 a.m. to 12:00 p.m. shift, left for work, she telephoned the "chat line" and had a conversation with a man who identified himself as "Mario," who claimed that he was nineteen years old.  The victim

---

[1]It is the policy of this court to identify minor victims of sexual crimes only by their initials.

acknowledged that she invited him to her residence and was wearing only a t-shirt when she met him at the door. She maintained that she told the defendant her age. According to the victim, the two watched television for a few minutes before they went into her bedroom. She testified that the defendant asked her to give him a massage, fondled her breast under her shirt, and, after she rolled over, attempted to penetrate her vagina with his penis. She initially said that the defendant did penetrate her vagina "for about three seconds" before she told him to "move." Later, she explained that the defendant did not penetrate her vagina because he was in "the wrong spot." Still later in her testimony, she expressed uncertainty as to whether the defendant had penetrated her.

The victim recalled that she heard a knock at the door just after she told the defendant to "move." She stated that she helped the defendant hide in her closet before answering the door. She testified that her neighbor, Shermida Fields, who was at the door, asked the victim what was going on and the victim replied, "Nothing." According to the victim, Ms. Fields walked through the door directly to the victim's bedroom where she saw one of the defendant's shoes lying near the victim's bed. Ms. Fields opened the closet door, asked the defendant his name and age, and ordered him to leave. The victim recalled that Ms. Fields took the defendant's wallet, which was lying on the floor, and put it in her bra. The victim later learned from Ms. Fields that the defendant was thirty years old.

The victim testified that on the following day, Ms. Fields reported the incident to her mother and her mother called the police. She recalled that she went to the Sexual Assault Center for an examination. The victim reiterated that the defendant was aware that she was only fourteen years old.

During cross-examination, the victim conceded that she knew that the "chat line" she had called was for adults only. She admitted that she invited the defendant to her residence and willingly let him inside. She acknowledged that the defendant did not penetrate her vagina with his penis. The victim conceded that she had invited other boys to her house while her mother was at work and that she had been involved with other sexual partners. She also acknowledged that she was diagnosed with a sexually transmitted disease during her examination at the Sexual Assault Center and admitted that she did not contract the disease from the defendant.

Shermida Fields testified that Ms. Ford had asked her to keep an eye on the victim while she was at work. She recalled that on the morning of the offense, she was checking in on her own children when she heard voices coming from the victim's bedroom, which was on the other side of the wall. According to Ms. Fields, she put her ear to the wall and when she heard a man's voice she walked to the victim's residence and knocked on the door. Ms. Fields stated that the victim did not answer the door immediately and when she finally came to the door, she was dressed in only a t-shirt. She testified that she entered the residence, saw a man's shoe lying on the floor near the victim's bed, and discovered the defendant hiding in the victim's closet. Ms. Fields testified that the defendant claimed that his name was "Mike" and that he was nineteen years old. She stated that she picked up the defendant's wallet and put it inside her shirt.

Ms. Fields explained that she did not call the police immediately because she felt that it would be more appropriate to allow the victim's mother to "handle" the situation. She said that she was unable to telephone the victim's mother at work because the victim "all of a sudden got amnesia and . . . didn't know the number." Ms. Fields testified that she informed Ms. Ford of the incident when she returned home later that day and the victim's mother called the police. She recalled that when the police arrived, she gave a statement and turned over the defendant's wallet. She later traveled with the victim and her mother to the Sexual Assault Center. During cross-examination, Ms. Field's acknowledged that she had discovered the victim with a boy in her room on one other occasion.

Helen Ford testified that she left for work at 2:40 a.m. on the day of the offense and that the victim was in bed at that time. She stated that when her shift ended at noon, she telephoned the victim and went to a mall before returning to her residence that afternoon. She recalled that the victim was acting "a little different" and that, shortly thereafter, Ms. Fields arrived and informed her of what had happened earlier that morning. According to Ms. Ford, she became angry, told the victim that she could no longer live with her, and called the police to come and take the victim. She stated that when the police arrived and learned what had happened, they directed her to take the victim to the Sexual Assault Center. Ms. Ford acknowledged that the victim admitted having had sex with other boys.

Nina Sublette, a nurse practitioner from the Memphis Sexual Assault Center, testified that she performed an examination of the victim. According to Ms. Sublette, the victim had suffered no physical injuries and bore no physical manifestations of a sexual assault. She stated that the victim tested positive for a sexually transmitted disease but that she did not contract the disease from her encounter with the defendant.

In this appeal, the defendant asserts that the evidence was insufficient to support his conviction. On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

The defendant was convicted of attempted statutory rape. "Statutory rape is sexual penetration of a victim by the defendant or of the defendant by the victim when the victim is at least

thirteen (13) but less than eighteen (18) years of age and the defendant is at least four (4) years older than the victim." Attempt, as applicable in this case, is defined as follows:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
>       *                     *                    *
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
> (b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

Tenn. Code Ann. § 39-12-101(a)(3), (b).

The proof adduced at trial established that the victim spoke with the defendant on a "chat line" and invited him to her residence, where they had a sexual encounter. According to the victim, the defendant attempted to penetrate her vagina with his penis. While the victim gave inconsistent statements with regard to whether the defendant was successful in his efforts, her unqualified testimony was that he had attempted penetration. Although she initially spoke with the defendant on a "chat line" that was for adults only, the victim testified that she told the defendant that she was only fourteen years old. Other proof established that the defendant was thirty years old at the time of the offense. The jury accredited the testimony of the victim. That was their prerogative. See State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995). In our view, the evidence is sufficient to support the conviction for attempted statutory rape.

 

 

_____

GARY R. WADE, PRESIDING JUDGE